No. 23-2428

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| DAVID FELIMON CERDA, | ) | On Appeal from the United |
| | ) | States District Court for the |
| Plaintiff-Appellant, | ) | Northern District of Illinois, |
| | ) | Eastern Division, |
| vs. | ) | |
| | ) | Case No. 2017-cv-9023 |
| | ) | |
| CHICAGO CUBS BASEBALL CLUB, LLC, | ) | Judge Jorge L. Alonso |
| | ) | |
| Defendant-Appellee. | ) | |

# APPELLANT'S REPLY BRIEF

David A. Cerda
Cerda Law Office
1000 N. Lake Shore Dr., No. 1502
Chicago, Illinois 60611
(312) 623-8219
dcerda@cerdalaw.com
*Attorney for the Appellant*

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.   PLAINTIFF HAS STANDING TO LITIGATE HIS CLAIM OF NONCOMPLIANCE WITH
     LUXURY BOX SEATING IN THE 1914 CLUB . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.   THE COURT ERRED AS A MATTER OF LAW WHEN DISMISSING PLAINTIFF'S
     ARGUMENTS SUPPORT OF HIS VERTICAL DISPERSION CLAIMS IN THE BOX SEATING
     AREA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.   THE DISTRICT COURT ERRED AS A MATTER OF LAW IN DISMISSING PLAINTIFF'S
     LACK OF VERTICAL DISPERSION CLAIM WITH REGARD TO THE BLEACHERS . . . . . . 4

D.   THE DISTRICT COURT ABUSED ITS DISCRETION WHEN DENYING PLAINTIFF LEAVE
     TO FILE A FOURTH AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

E.   UPPER DECK 300 LEVEL ADA SEATS ARE IN VIOLATION OF WHEELCHAIR SPACE
     REGULATION REQUIREMENTS PER ADA SECTIONS 221 & 802 (26 SEATS) . . . . . . . 7

F.   TERRACE 200 LEVEL ADA SEATS ARE IN VIOLATION
     OF THE ADA EQUAL LINE OF SIGHT REQUIREMENTS (76 SEATS). . . . . . . . . . . . . 10

G.   BLEACHERS SECTION 501 ADA SEATS ARE IN VIOLATION OF THE
     ADA INTEGRATION REQUIREMENT (3 SEATS) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

H.   BLEACHERS BATTER'S EYE ADA SEATS ARE IN
     VIOLATION OF THE ADA (15 SEATS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.   WRIGLEY FIELD IN VIOLATION OF THE MINIMUM NUMBER OF ADA SEATS REQUIRED
     UNDER THE ADA (ONLY 105 OF 209 SEATS REQUIRED) . . . . . . . . . . . . . . . . . . . 14

J.   SEATING NOT HORIZONTALLY DISPERSED AS REQUIRED BY THE ADA . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF COMPLIANCE WITH CIR. R. 32(c) . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES

CASES

*Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693
(N.D. Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Colorado Cross-Disability Coalition v. Colorado Rockies Baseball Club, Ltd.*,
336 F. Supp. 2d 1141 (D. Col. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Kramer v. Brodie Oaks Center, Ltd.*, 2014 WL 690629
W.D. Tex. 2014 at * 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069 (7th Cir. 2013) . . . . . . . . . . . . . . 4-5

ADA STANDARDS

221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
221.2.1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
221.2.3.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
221.2.3.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3
302.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
304.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
802.1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
802.1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
802.1.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
802.1.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

RULES

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT

The Cubs' Response largely studiously avoids and sidesteps the factual and legal issues raised by the plaintiff on appeal.

ARGUMENT

The standard of review is *de novo* unless otherwise indicated.

A.   PLAINTIFF HAS STANDING TO LITIGATE HIS CLAIM OF NONCOMPLIANCE WITH LUXURY BOX SEATING IN THE 1914 CLUB

The Cubs do not dispute that the ADA requires ADA seating in all luxury boxes but the Cubs did not create ADA seats in the 1914 Club (nor provide wheelchair access to the seating area within the 1914 Club) when that seating area was created after that seating area was completely rebuilt from the ground up in 2016. Thus, even if plaintiff obtained a ticket in the 1914 Club seating area, he could not sit in the 1914 Club because there are no ADA seats in the 1914 Club nor is there access to the 1914 Club seating area.

The Cubs continue to maintain that plaintiff lacks standing to complain of the failure to provide any ADA seats in the 1914 Club because plaintiff was not a member of the club nor did he seek to be a member of the 1914 Club. The Cubs continue to ignore the absurdity in requiring membership in the 1914 Club to have standing to claim violation of Standard 221.2.1 because "As it stands, even if plaintiff or any other wheelchair patron is offered a seat as a guest of a member of the 1914 Club, they cannot watch the game from the 1914 Club seating area

because there are no wheelchair seats available." Dkt. 54, p. 17. The Response

also failed to address plaintiff's citation to *Betancourt v. Federated Dept. Stores*,

732 F. Supp. 2d 693, 708 (N.D. Tex. 2010)("a plaintiff need not engage in the futile

gesture of visiting an accommodation she knows to be discriminating against her

in order to establish standing.")*; and, see also, Kramer v. Brodie Oaks Center,*

*Ltd.*, 2014 WL 690629 W.D. Tex. 2014 at * 4. Dkt. 74, n. 1.

The appropriate examination for standing here *is* whether plaintiff has

shown that he can be a guest in a similar luxury club. As detailed in plaintiff's

Opening Brief, he met that burden. Plaintiff alleged and showed that he sat in a

similar luxury seating area in Cincinnati. To this the Cubs say, that's a different

ballpark. Of course it is because that ballpark complied with the ADA and

provided ADA seats in that luxury seating area. The Cub then argue that plaintiff

sat in those seats years ago. However, there is no question that plaintiff sat in the

best seats at Wrigley Field when they were available to him but could not sit in the

newly created seating area behind home plate because that seating area is

noncompliant as a matter of law. Plaintiff's factual claims and legal arguments are

not conjecture or hypothetical but instead allege actual and continuing harm.

      B.     THE COURT ERRED AS A MATTER OF LAW WHEN DISMISSING PLAINTIFF'S ARGUMENTS IN SUPPORT OF HIS VERTICAL DISPERSION CLAIMS IN THE BOX SEATING AREA.

The ADA requires "front to back" vertical dispersal of seating. Standard

221.2.3.2 and Advisory. The ADA also requires that ADA seating must be integrated throughout an assembly area. ADA Standard 221.2.2.

After rebuilding Wrigley Field, the Cubs failed to provide *any* ADA seats in the most forward box seats, Sections 2-40. *See,* A-82 for a Seating Map showing these seating sections. That is: no seats in the first rows of Sections 2-40, no seats in the last rows of Sections 2-40, and no seats in between those rows. None. These are newly built seating sections which are required to have *some* ADA seats to have vertical dispersal of seating. Plaintiff is not arguing that all seating for Sections 2-40 must be in the first rows of those Sections but *some* must be. *Some* ADA seats should also be in the last row of Sections 2-40.

Next, the Cubs ignore the ADA's standards and case law cited in his Opening Brief that not all ADA seats can be placed in the last row of a section. The only ADA seats in Sections 101-142 are in the last rows of those Sections.

As plaintiff's Opening Brief points out, this was not the case before the rebuilding of these seating areas. The Cubs used to have seats in between the last rows of Section 2-40 and the front rows of 101-142.

The district court and the Cubs also ignored plaintiff's argument that while bleacher seating does not require seating forward of the main point of entry, the lower grandstand is not granted such an exemption. All ADA box seats are now in the last row of the lower grandstand.

The Cubs' argument about the briefing on this issue in the district court is not correct. Instead, plaintiff's representation of the briefing on the issue in his Opening Brief is correct. Plaintiff waived nothing.

The district court's denial of plaintiff's Motion for Reconsideration of his vertical dispersion claim concerning the box seating area should be reversed; and because the facts are undisputed and plaintiff is entitled to judgment as a matter of law, judgment should be entered in favor of plaintiff with a remand for further adjudication.

C. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN DISMISSING PLAINTIFF'S LACK OF VERTICAL DISPERSION CLAIM WITH REGARD TO THE BLEACHERS.

The Cubs' Response ignores plaintiff's argument that when ruling on the Cubs' Rule 12(b)(1) Motion to Dismiss plaintiff's vertical dispersion claim in the bleachers, the district court should not have counted the Batter's Eye seats as being ADA complaint because plaintiff alleged that these 15 seats on the main concourse were not ADA compliant. *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). Had the district court ruled correctly on the Rule 12(b)(1) Motion to Dismiss, the district court would have found than no ADA seats on the main concourse were complaint and all ADA seating in the bleachers was in the newly built upper decks to the bleachers in violation of the ADA and case law. *Colorado Cross-Disability Coaltion v. Colorado Rockies Baseball Club, Ltd.*,

336 F. Supp. 2d 1141 (D. Col. 2004).

The Cubs' argument and the district court's finding that plaintiff lacked standing on this issue is wrong. Plaintiff alleged and argued repeatedly that prior to the rebuilding of the bleachers, he sat in ADA seats on the main concourse in Sections 316, 317 and 318 — but that at the time he filed his Complaint in 2017, he could not because that area was converted wrongly into a luxury seating area. Dkt. 1, ¶¶ 11-13. Plaintiff is also entitled to standing if at the time of filing his complaint he faces an immediate threat of harm. *Scherr v. Marriott Intern., Inc.*, 703 F.3d 1069, 1073-74 (7th Cir. 2013). The Cubs were not playing baseball in December 2017 when plaintiff's Complaint was filed. The first date that the Cubs played baseball thereafter was Opening Day 2018 and sure enough plaintiff was compelled to sit in the upper deck of the bleachers because the Cubs did not have bleacher seating on the main concourse in violation of the ADA.

The district court's rulings on plaintiff's vertical dispersion claims in the bleachers should be reversed and judgment entered in favor of the plaintiff because the Cubs do not have enough ADA seats on the main concourse of the bleachers. The case should be remanded for further adjudication of this claim.

D. THE DISTRICT COURT ABUSED ITS DISCRETION WHEN DENYING PLAINTIFF LEAVE TO FILE A FOURTH AMENDED COMPLAINT.

The district court abused its discretion regarding plaintiff's line of sight

allegations in a number of ways. First, the district court did not allow plaintiff to proceed on his general allegation that Wrigley Field did not have enough ADA compliant seats. Dkt. 35, ¶65." Opening Brf. 35. The district court then denied leave to include this line of sight claim specifically even though discovery concerning plaintiff's line of sight allegations would have been very short and not beyond the discovery date. On the other hand, just a few weeks before trial the Cubs made additional alterations to the 300 level ADA seating which required a field visit and photographing of the altered seating areas. Then after plaintiff's counsel asked defendants' counsel if the Cubs had somehow gotten some exemption to City of Chicago Code regarding the new 300 level seats, the week before trial Cubs further altered the 300 seating area and put wooden extensions underneath the railing of certain ADA seating area which required inspection and photographing the day before trial, Easter Sunday no less. Then the Cubs' expert was allowed to disclose a new expert opinion for the first time two days into the trial. That new opinion was cooked up just days before the trial and not referenced anywhere in that expert's previous disclosed opinions.

Yes, this issue comes down whether the district court abused its discretion. The district court did so by not allowing plaintiff to proceed on his line of sight claims two years before trial but allowing into evidence new facts disclosed the day before trial and a new expert opinion two days into trial. Plaintiff's discovery

would have involved taking measurements, applying the ADA Standards and perhaps questioning defendant's expert on this issue. The line of sight violation is a matter of math and law just as the issue on the 300 level is currently.

The district court abused its discretion because it allowed the Cubs to introduce new facts and opinions on the eve of and at trial but denied discovery to plaintiff two years before trial. Consequently, the district court's decision should be reversed and remanded so that plaintiff can litigate his line of sight claims. Plaintiff notes that the Cubs' Response asserts that plaintiff did not challenge seating on the 100 level. Rsp. 16. That is not correct. Plaintiff claimed that the 100 seats failed to provide a line of sight as required by the ADA but he was not allowed to litigate this claim. Accordingly the Cubs' chart of disputed seats is not correct if it is to represent all seats challenged by plaintiff in this litigation.

E.    UPPER DECK 300 LEVEL ADA SEATS ARE IN VIOLATION OF WHEELCHAIR SPACE REGULATION REQUIREMENTS PER ADA STANDARDS 221 & 802 (26 SEATS).

The Cubs continue to make the upside down and backwards argument that Chapter 3 of the ADA controls and defines the requirements of ADA seating in assembly areas when instead it is clear that wheelchair space requirements are defined by Standards 221 and Chapter 8.

Standards 802.1.2 & 802.1.3 set forth that a wheelchair space for front or rear entry must be 36" wide and 48" deep. The next two standards inform that this

wheelchair space is a vertical wheelchair space that shall not be encroached upon. Standard 802.1.4 prohibits the overlapping of wheelchair spaces. Standard 802.1.5 prohibits a wheelchair space from overlapping a circulation path. Thus, wheelchair spaces in an assembly area include the vertical space within a front or rear entry space of 36" wide and 48" deep. This space is to be used by an ADA patron to experience events and performances outside of this space.

By complete contrast, Chapter 3 concerns the dimensions of a space or area within which something to be used by a wheelchair patron and have different dimensions than those required of wheelchair spaces in an assembly area. Opening Brf. 14-15.

Contrary to the Cubs' Response, plaintiff introduced the dimensions of the challenged wheelchair spaces on the 300 level via the testimony of the Cubs' expert Anderson and the three Sections for which Prof. Ferrie was allowed to testify to.

The Cubs' fair warning argument vis a vis the Justice Department is ridiculous given that the Cubs disclosed their newly concocted interpretation two days into trial. The Cubs' concoction created on the eve of trial (but not disclosed) is so half baked that the wooden extensions cannot be considered a floor because they are not stable. A "floor" is required to be "stable" and "firm." Standard 302.1 and should be able to support the weight of a patron and the front wheels of a

power chair. The wooden extensions would not. Furthermore, the wooden extensions are inaccessible as they are behind a railing and cannot be considered part of the space.

When the ADA requires something it states so. Diagrams are also provided. Nothing refers Section 802 to Section 304.5. All the vertical space underneath the green colored railings in the Cubs' Response at 33 cannot be considered as part of the minimum 48" deep space required. As plaintiff pointed out at trial he cannot use that space to recline to improve circulation because he is blocked by the railing. Other wheelchair patrons are able to and need to stand from time to time but cannot use that space either because they would need to push their wheelchair back into the aisle and encroach more than 44" into the aisle.

Plaintiff accepts the arguments on this issue made by the United States in its Amicus Brief, but notes that the number of noncompliant seats on the 300 level is twenty-six (26), not fifteen (15) as set forth in the Amicus Brief which quoted the number stated by the district court in his Memorandum and Opinion. A-61; Dkt. 258, p. 30. Because 26 seats are noncompliant in the 300 level alone, the Cubs' claim of having 225 ADA compliant seats is reduced to 199 which is below the 209 the Cubs' concede they need to be compliant with the minimum number of seats required by the ADA. This triggers a reversal of the district court's ruling that the Cubs had the minimum number of ADA so that judgment should be entered in

favor of plaintiff on this claim based on the 300 level ADA seating alone. But there are many more noncompliant seats as discussed below.

The decision of the district court should be reversed, judgment entered on behalf of plaintiff noting 26 noncompliant seats, judgment entered in favor of plaintiff on his claim of the lack of the minimum number of ADA required seats, and the matter remanded for further proceedings.

F.      TERRACE 200 LEVEL ADA SEATS ARE IN VIOLATION OF THE ADA EQUAL LINE OF SIGHT REQUIREMENTS (76 Seats).

The evidence and argument submitted at trial by plaintiff shows that it is just the last four rows in the 200 Section that have a view of the field that is so obstructed that the Cubs installed TV monitors so patrons can watch the game on TV. Patrons five rows down from the last row, however, can see the centerfield scoreboard in full and watch the game. It is undisputed that most of the seating in the 200 Section is forward of the last four rows in the 200 Section.

Plaintiff presented the difference in the view between the last four rows and the fifth row at trial, in his post trial brief and in his Opening Brief in great detail using testimony from Cubs Vice President Meenan, the Cubs' expert Anderson, the Cubs former Vice President of Operations Carl Rice, plaintiff's witness Prof. Ferrie, photographs and the Cubs' own computer generated views from the seats. These are the completely substantiated and undeniable facts, contrary to the

Cubs' suggestion at 45. The district court did not address plaintiff's contention head on. His findings were not only clearly erroneous but wrong as a matter of law.

The Cubs' suggestion that plaintiff testified that the view from the ADA seats on the 200 level is "decent," Rsp. 19, is not correct. At Tr. 710:25 plaintiff was asked on direct whether he was isolated from other patrons when sitting in Section 120. Then he is asked about his experiences in Sections 206 to 208. He testified that it was a "decent experience." Those words should be applied with regard to whether the seats in Sections 206 to 208 were isolated. Plaintiff's next words make clear the *view* was not decent, "You could not see any fly balls." Tr. 711:5-7. Plaintiff next testified that from those seats he could not see the "mechanical" centerfield scoreboard either. Tr. 711: 8-10.

The majority of the seats in the Terrace area are forward of the last four rows; hence plaintiff has shown conclusively that the views and experiences from the ADA seats in the Terrace are not equivalent to or better than that of non-ADA patrons in the Terrace much less than those in the rest of the ballpark as required by the ADA.

The Cubs continue to make the curious argument that the particular preferences of some patrons, e.g., persons wanting to sit in shade because of their skin condition, overrides their requirement to provide wheelchair patrons with

ADA spaces that are ADA compliant.

The Cubs completely rebuilt the first six rows of the 200 level. The Cubs could have and should have put most of the ADA seating on the 200 level in those rows and could have placed some in the last row to the right of Section 232.

The district court's ruling on the 200 level ADA seats should be reversed, judgment should be entered in plaintiff's favor as a matter of law, and these claims should be remanded for further adjudication.

G.      BLEACHERS SECTION 501 ADA SEATS ARE IN VIOLATION OF THE ADA'S INTEGRATION REQUIREMENT (3 SEATS)

The Court's findings with regard to Section 501 are not only clearly erroneous, they are wrong as a matter of law. These purported ADA seats are noncompliant because they are not integrated into the seating plan as require by ADA Standard 221.2.2.

The three ADA seats in Section 501 are the only seats at all in that area. See, PX 168. The three ADA seats are cordoned off with railings. Cubs' Vice President Mr. Meenan testified that no one other than ADA patrons and their companions are allowed into the area of Section 501 seats. "[W]e would, on a game day, not allow people into that area outside of the people sitting in those seats." Tr. 367, 22-23. There are no seats in front of the three ADA 501 seats, nor to the right, nor to the left, nor to the rear. There can be no interaction and high

fives with non-ADA patrons from Section 501. This is an isolated not a communal space.

The district court erred as a matter of law, the judgment in favor of the Cubs should be reversed and entered in favor of plaintiff and the matter remanded for further adjudication.

### H. THE BLEACHERS BATTER'S EYE ADA SEATS ARE NOT INTEGRATED (15 SEATS)

Similarly, the Batter's Eye seats are completely isolated from other patrons. There are no seats forward of the Batter's Eye seats. The front of the section is enclosed by tinted glass. The right side of the Batter's Eye section is enclosed with a chain link fence. That chain link fence is covered in mesh. Fans inside the Batter's Eye are further blocked off from the seating area to their right by a camera. The left end of the Batter's Eye is also enclosed by a chain link fence. That fence too is covered in mesh. *See* Anderson's trial testimony, Tr. 401:3-12. There is no seating area behind the Batter's Eye section. The back of the Batter's Eye section is on a heavily trafficked concourse. The back of the Batter's Eye section is also enclosed by a chain link fence. That fence too is covered in mesh. The space above the heads of patrons in the Batter's Eye is covered in mesh.

To this the Cubs could claim, as they did with Section 501, that wait the Batter's Eye seats are next to non-ADA seats. That, like the Cubs' representation

that ADA Section 501 seats are next to general admission seats, is a gross exaggeration. No other patrons are allowed in the seating area which is separated by physical barriers as with Section 501. The Batter's Eye seating area violates the ADA's integration requirement as a matter of law.

I.    WRIGLEY FIELD IN VIOLATION OF THE MINIMUM NUMBER OF ADA SEATS REQUIRED UNDER THE ADA (ONLY 105 OF 209 SEATS REQUIRED).

The parties have agreed for this trial that the Cubs are required to have 209 compliant ADA seats. The Cubs claim to have 225 ADA compliant seats.

As shown above, 26 seats are noncompliant in the upper deck on the 300 level; 76 Seats are noncompliant in the 200 level Terrace seating area; 3 seats are not compliant in Section 501; and 15 seats are noncompliant in the Batter's Eye That is 120 noncompliant seats. That leaves the Cubs with 105 ADA compliant seats as of this trial. Even if this Court does not opine on the Batter's Eye seating area, the Cubs have 105 noncompliant seats and only 120 of the 209 seats needed to be ADA compliant.

The Cubs are in violation of the number of ADA seats required by Standard 221.2.1.1.

The district court's judgment on plaintiff's claim should be reversed as a matter of law, judgment entered in plaintiff's favor, and the matter remanded for further adjudication.

J.    SEATING NOT HORIZONTALLY DISPERSED AS REQUIRED BY THE ADA

Given the large number of noncompliant seats as explained above, there are large gaps in the horizontal dispersion of seating. The Cubs are thus in violation of the requirement of horizontal dispersion pursuant to 221.2.3.1.

Plaintiff also agrees with the arguments on this issue made by the United States in its Amicus Brief.

The district court's judgment on plaintiff's claim should be reversed as a matter of law, judgment entered in plaintiff's favor, and the matter remanded for further adjudication.

CONCLUSION

This Court should reverse the decisions of the district court as identified above, enter judgment on behalf of plaintiff where requested above, remand for further proceedings as requested above, apply Cir. R. 36 on remand, and enter such other orders as are appropriate.

Respectfully submitted,

s/David A. Cerda
Attorney for the Plaintiff

David A. Cerda
Cerda Law Office
1000 N. Lake Shore Dr., No. 1502
Chicago, Illinois 60611
(312) 623-8219
dcerda@cerdalaw.com

## CERTIFICATE OF CIR. R. 32(c) COMPLIANCE

The undersigned certifies that his brief complies with the type-volume limit of Cir. R. 32(c) as Appellant's Reply Brief contains, 3,677 words, excluding the parts of the brief exempted by F.R.C.P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (6) and Seventh Circuit Rule 32(b) because it was prepared in Century 725BT in 13-point font using WordPerfect.

Respectfully submitted,

s/David A. Cerda
Attorney for the Plaintiff